Martínez, Plaintiff and Appellant, *v.* Rodríguez, Defendant and Appellee.

Appeal from the District Court of Guayama in an Action to Annul a Will, etc.

No. 1684.—Decided December 7, 1917.

Will—Fraud and Collusion—Evidence.—The authorities are unanimous that in an action to annul a will apparently valid in form and solemnly made before a notary, on the ground of fraud and collusion, the proof must be clear and when the plaintiff fails to establish a clear case, as required by law, his action must be dismissed.

View—Attendance of Parties—Evidence.—The Law of Evidence of March 9, 1905, is not inconsistent with the provisions of sections 1183, 1208 and 1209 of the Civil Code relating to personal view by the court or judge, such view being a means of evidence which should be made in the presence of the parties or their attorneys, who should be given an opportunity to explain or add to the result of the same as they see fit. Likewise, the court should reduce its view to form.

Notarial Instrument—Renunciation of Rights—Evidence.—If deeds to land or renunciations of rights could be annulled subsequently by testimony of the character presented in this case, tending to show that a party to the deed did not know its contents and that, although he signed the deed willingly so far as the conveyance of his interest in the particular piece of property was concerned, the notary read the deed so rapidly that he could not follow, the number of attacks that could be made on notarial deeds would be unlimited and the acquisition of property would be rendered uncertain; but the rule of law is otherwise.

The facts are stated in the opinion.
*Mr. Manuel A. Martínez Dávila* for the appellant.

*Mr. C. Domínguez Rubio* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

In the dwelling-house of herself and husband, on the 24th day of April, 1914, Manuela Martínez Vázquez executed an open will before Notary Francisco Navarro Ortiz of Cayey. She died nine days later, on the 3rd of May, 1914. Her father, Manuel Martínez Avilés, is the complainant in this suit. The defendant is Fructuoso Rodríguez, her husband.

On the 16th of May, 1914, the complainant-appellant appeared before the same notary and for $1,400 ceded to Fructuoso Rodríguez all his rights and actions to the estate of his daughter, all rights under the said testament of April 24, 1914, and more particularly he sold to the said Fructuoso Rodríguez his title to a particular piece of property which had been adjudicated to him under the will.

The said will fixed values on all of the properties of which the testatrix attempted to dispose and purported to make a partition of the testatrix's share of the matrimonial property.

The complaint set up three different causes of action. On the ground of fraud and deceit the will was attacked. On the same ground the valuations and partitions made in the will were attacked in the second cause of complaint. And similarly the third cause of the action charges fraud and collusion in the execution of the deed.

The defendant not only denied all of the allegations of fraud, but set up a positive estoppel against the complainant by reason of his execution of the deed of May 16, 1914.

The burden of the first cause is set out in the seventh clause of the complaint as follows:

"The plaintiff alleges that the clause transcribed above was not dictated to the notary by the testatrix, for she was in a serious condition of suffering from miliary tuberculosis of the lungs; that she was entirely ignorant of such matters, and that the said will was made in a room away from the one which the testatrix occupied and was dictated by the defendant and the notary by agreement

for the purpose of defrauding the plaintiff as heir at law of the testatrix; that the said testatrix did not authorize either her husband, the defendant, or the notary to insert the said clause in the will; that the witnesses to the will were not present when it was made, and that the said defendant, with the deliberate purpose of defrauding the plaintiff, sent the latter to Guayama and away from the house of the testatrix in order to draft the said will behind his back without the authorization of the testatrix, who took no part in its drafting; that the defendant and his wife never at any time entered into a marriage contract by which the said defendant was to receive any interest for his management, and that the defendant in bad faith, deceitfully and fraudulently, caused the foregoing clause to be inserted in the will of his wife in order thus to deprive the plaintiff of a part of his inheritance as the heir at law of his daughter."

At the trial the witnesses of complainant testified that Manuela Martínez Vázquez was sick in her bed with the disease described in the complaint, but they also gave other testimony, not responsive to the complaint, that she was an habitual drunkard and subject to acute attacks of *delirium tremens*.

While they do not agree among themselves, these witnesses also testified that the testatrix was in no condition to make a valid deed or testament, although the opportunities of most of them to know this fact are very vaguely set forth, and one of the principal witnesses for the complainant gave evidence tending to show that on the day of the execution of the will testatrix was able to converse with himself and his wife and to ask for them solicitously.

The evidence of *delirium tremens* merited no particular belief, inasmuch as no medical man was called in to testify, and yet the proof tended to show that she was attended by a physician, Doctor Janer. Indeed, there is evidence to show that the said doctor prescribed brandy for her. Moreover, as we have stated, the defendant had no notice that the complainant was attempting to rely on these facts.

Some of these various witnesses gave evidence of the circumstances under which the will was executed, describing the

situation from which they maintain that they saw the persons who were called in to execute or be witnesses to the same.

There was evidence tending to show that the properties adjudged to the husband were of less value than the amounts described in the will, and there was also evidence tending to show that the property adjudicated to the father was worth less than the sum of $1,400 mentioned in the will.

The theory of the will was that the husband owned about two thousand dollars' worth of separate property which the testatrix acknowledged, along with other things, and the complainant at the trial attempted to show that at the time of his marriage Fructuoso Rodríguez had nothing at all.

The testimony, although contradicted by the will, that the husband had no property at the time of the marriage, does not satisfy us, and were the proof satisfactory it could not prevent the affirmance of the judgment because of the acts and conduct of the complainant subsequent to the death of his daughter.

Here is a will, apparently valid in form, solemnly made before a notary, and the authorities are unanimous that when fraud and collusion are charged the proof must be clear. While we have not recited all of the testimony, our examination of the statement of the case convinces us that the evidence presented was not the clear proof that the law requires.

The court, however, whether or not it had some doubt of the veracity of the testimony of the witnesses for the complainant, made an ocular inspection of the house where the testatrix died. From this inspection the court was convinced that the witnesses for the complainant, or some of the principal ones, were not telling the truth. This ocular inspection was made by the court of its own motion, without any suggestion from either of the parties and without the presence of the parties at such inspection.

Section 1183 of the Civil Code provides that the truth may be given by instruments, by a confession, by the per-

sonal inspection of the court or judge, by experts, by witnesses, and by presumptions.

Sections 1208 and 1209 of the same code are as follows:

"Section 1208.—Evidence by personal inspection by the court or judge shall only be effective in so far as it clearly permits the court to judge, by the external appearance of the thing inspected, of the fact which he desires to ascertain.

"Section 1209.—The inspection made by a court or judge may be weighed in the sentence rendered by another, provided the former has set forth with perfect clearness in the proceedings the details and circumstances of the thing inspected."

The Law of Evidence of March 9, 1905, is not inconsistent with these provisions. As the ocular inspection is, therefore, a mode of evidence it should be made in the presence of the parties or their attorneys, who should be given an opportunity to explain or to add to the result of such inspection. Likewise, the court should reduce its ocular inspection to form (acta).

None of these things were done in this case. The complainant might have had his witnesses explain the situation, or, at least, offer to do so. Before the close of the trial counsel might have argued to the court on the effect of such ocular inspection, and this they generally have a right to do. If this were, then, a case of a real conflict in the evidence, the judgment would have to be reversed, but our examination of the whole record convinces us that substantial justice has been done, and we have that conviction to such a degree that we should have felt bound to reverse if a judgment had been rendered for the complainant.

We think so, as intimated before, because the plaintiff failed to make out the clear case that the law requires when a complainant is attacking a will for fraud.

Similar considerations apply to the second cause of action, but the disposition of the said cause of action is also covered by the legal situation with respect to the third cause of action.

The complainant, a man who on the witness-stand showed himself to be sufficiently intelligent, active, and in most particulars even circumspect, only attacks the deed of May 16, 1914, by alleging substantially that its contents were unknown to him. He admits that he signed the deed willingly so far as the conveyance of his interest in the particular piece of property was concerned, but maintains that the notary read the deed so rapidly that he, the complainant, could not follow. Furthermore, that he was never approached on any subject except the transfer of the particular piece of property mentioned.

If deeds of land or renunciation of rights could be subsequently annulled by testimony of the character here presented the number of attacks that could be made on notarial deeds would be unlimited and the acquisition of property would be rendered uncertain. The rule of law is otherwise. For similar reasoning the case of *Cruz* v. *López*, 17 P. R. R. 40, is applicable, and so are the cases of *Torres Zayas* v. *Lothrop, Luce & Company*, 16 P. R. R. 172; 231 U. S. 171.

The judgment must be

*Affirmed.*

Justices del Toro and Hutchison concurred.
Chief Justice Hernández and Justice Aldrey absent.